## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VADZIM LASKO,**<br>               **Petitioner,**<br><br>                v.<br><br>**JOHN RIFE, JAMAL LAWRENCE JAMISON, TODD M. LYONS, MARKWAYNE MULLIN, TODD BLANCHE,**<br>               **Respondents.** | **CIVIL ACTION**<br><br><br><br>**NO.  26-3998** |

**HODGE, J.**                                                            **July 20, 2026**

### MEMORANDUM

Petitioner Vadzim Lasko ("Petitioner" or "Mr. Lasko") brings a petition for a writ of habeas corpus (ECF No. 1 (the "Petition")) that is distinguishable from the majority of habeas petitions that have come before this Court in recent months. Mr. Lasko is not being held pursuant to the mandatory detention provisions under Immigration and Nationality Act ("INA") § 235, 8 U.S.C. § 1225(b)(2). Rather, he is detained pursuant to 8 U.S.C. § 1231(a), as the Government alleges that he is subject to a final removal order and is being detained to effectuate his removal from the United States pursuant to that order. Because Respondents failed to comply with their own regulations when revoking Mr. Lasko's OSUP, they violated 8 C.F.R. § 241.4(*l*)(2) and Mr. Lasko's due process rights. Therefore, and for the reasons set forth below, the Petition is granted.[1]

---

[1] The Court may decide the issues raised in the Petition without a hearing, as other courts have done in similar cases. *See  Ubaid v. Jamison*, No. 26-cv-2681, 2026 WL 1346670 (E.D. Pa. May 14, 2026); *Rodriguez Pereira v. O'Neill*, No. 25-cv-6543, 2025 WL 3516665 (E.D. Pa. Dec. 8, 2025).

### I.   BACKGROUND[2]

Mr. Lasko, a native and citizen of Belarus, entered the United States on December 21, 2021 at the San Ysidro Port of Entry. (ECF No. 1 ¶ 14; ECF No. 5 at 2; ECF No. 5-1 at 3.) Mr. Lasko asserted that he was fleeing persecution in his home country and requested political asylum in the United States. (ECF No. 1 ¶ 14; ECF No. 5 at 3; ECF No. 5-1 at 3.) He was subsequently detained by Immigration and Customs Enforcement ("ICE"), before being served an order of expedited removal on January 11, 2022. (ECF No. 1 ¶ 15; ECF No. 5 at 3; ECF No. 5-1 at 3.) In March 2022, Mr. Lasko was issued an Order of Supervision ("OSUP") and released from ICE custody.[3] (ECF No. 1 ¶ 16; ECF No. 5 at 3; ECF No. 5-2 at 3–5.)

Mr. Lasko filed an I-589 Application for Asylum on or about December 13, 2022, which remains pending.[4] (ECF No. 1 ¶ 17.) Mr. Lasko is married to a U.S. Citizen who filed an I-130, "Petition for Alien Relative," which was approved by U.S. Citizenship and Immigration Services ("USCIS") in July or August 2025[5], thereby initiating the process for seeking marriage-based lawful permanent residency status. (*Id.* ¶¶ 18–20; ECF No. 5-1 at 4.) Mr. Lasko has also filed a Form I-212, "Application to Reapply for Admission After Deportation or Removal," which remains pending before USCIS. (ECF No. 1 ¶ 21; ECF No. 5-1 at 4.) Since being released on the OSUP, Mr. Lasko has complied with all conditions of the order, including periodic check-ins with ICE. (ECF No. 1 ¶ 22.) Respondents do not claim that Mr. Lasko has violated the terms of his release or otherwise has any criminal history.

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

[3] The exact date on which the OSUP was issued is unclear from the filings. Mr. Lasko asserts that the OSUP was issued on or around March 22, 2022, "after more than three months in ICE detention." (ECF No. 1 ¶ 16.) Respondents assert that the OSUP was issued "in March 2022." (ECF No. 5 at 3.) Both parties attach the OSUP itself, which is dated March 2, 2022 at several points, but is signed by the "ICE Official Serving Order" on March 8, 2022. (ECF No. 1-3 at 5–6; ECF No. 5-2 at 5.)

On June 8, 2026, Mr. Lasko appeared at a routine ICE check-in appointment, where he was served with a "Notice of Revocation of Release" ("Notice") and immediately detained.[6] (*Id.* ¶¶ 1–2; ECF No. 5 at 3; ECF No. 5-3.) ICE officials served the Notice "based on a significant likelihood of [Mr. Lasko's] removal in the reasonably foreseeable future." (ECF No. 5 at 3.) The Notice was digitally signed by John Rife, Acting Director of the Philadelphia ICE Field Office, on June 8 at 3:53 p.m, and a Deportation Officer served the Notice on Mr. Lasko at 4:11 p.m. (ECF No. 5-3 at 3.) The same day, a "Warrant of Removal/Deportation" ("Warrant") was issued charging Mr. Lasko as subject to removal/deportation based upon a final order by "a designated official" and pursuant to §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I) of the Immigration and Nationalities Act ("INA"). (ECF No. 5-4 at 2.) Mr. Lasko has been detained at the Philadelphia Federal Detention Center since his arrest. (ECF No. 1 ¶ 2.)

## II.      LEGAL STANDARD

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United States

---

[4] Mr. Lasko asserts that he filed an I-589, "Application for Asylum and for Withholding of Removal," on December 13, 2022. (ECF No. 1 ¶ 17.) In their Opposition, Respondents attach Mr. Lasko's Form I-213, "Record of Deportable/Inadmissible Alien," which states that Mr. Lasko filed the I-589 on December 16, 2022. (ECF No. 5-1 at 4.) Neither date puts Mr. Lasko outside the one-year filing deadline for an affirmative asylum application. *See* 8 U.S.C. § 1158(a)(2)(B).

[5] Again, the dates provided by Petitioner and Respondents do not align. Petitioner asserts USCIS approved the Form I-130 on August 11, 2023. (ECF No. 1 ¶ 20.) Documents submitted with the Opposition assert that USCIS approved the Form I-130 in July 2025. (ECF No. 5-1 at 4.)

[6] Respondents' Opposition states that Mr. Lasko reported to the ICE Enforcement and Removal Operations ("ERO") Field Office for his appointment on June 6, 2026 rather than June 8, 2026. (ECF No. 5 at 3.) However, the Petition, Petitioner's Reply to the Opposition ("Reply"), the Notice of Revocation of Release, and Warrant of Removal/Deportation all indicate that Petitioner was detained on June 8, 2026. (*See* ECF No. 1 ¶ 1; ECF No. 7 at 2; ECF No. 5-3 at 3; ECF No. 5-4 at 2.) The Court therefore concludes the June 6, 2026 date in Respondents' brief is a scrivener's error.

3

. . . ." The burden is on the petitioner to show that his confinement is unlawful. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

## III.    DISCUSSION

Mr. Lasko argues that Respondents revoked his OSUP in violation of his Fifth Amendment right to due process, the Administrative Procedure Act ("APA"), and the *Accardi* Doctrine. Mr. Lasko asserts that Respondents failed to comply with Department of Homeland Security ("DHS") regulations governing the revocation of an OSUP, including making a determination that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate [Director]." 8 C.F.R. § 241.4(*l*)(2). Mr. Lasko further contends that he is improperly detained because the Government did not detain him for the purpose of preventing flight or to mitigate the risks of danger to the community, and his removal is not "reasonably foreseeable" given that he lacks a valid Belarusian passport. Finally, Mr. Lasko argues that his OSUP was revoked by an ICE officer without the regulatory authority to do so.

Respondents assert that ICE revoked Petitioner's OSUP based on a significant likelihood of his removal in the reasonably foreseeable future. They maintain that ICE complied with the applicable regulations at 8 C.F.R. § 241.4, the Fifth Amendment, the APA, and the *Accardi* doctrine when revoking Petitioner's OSUP. Respondents also contend that the Court lacks jurisdiction over this matter.

### A.  8 U.S.C. § 1252(g) Does Not Deprive the Court of Jurisdiction Over This Matter

Respondents argue this Court lacks jurisdiction to hear Mr. Lasko's claims under 8 U.S.C. § 1252(g). (ECF No. 5 at 12.) Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by any alien arising from the decision or action by the Attorney General

4

to commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g). However, as my colleagues have explained repeatedly in opinions involving issues similar to those now before this Court, a challenge to unlawful detention does not fall within the three categories over which § 1252(g) strips this Court of subject matter jurisdiction. *See Ubaid v. Jamison*, No. 26-cv-2681, 2026 WL 1346670, at *2 (E.D. Pa. May 14, 2026) (Younge, J.); *Kashranov v. Jamison*, No. 25-cv-5555, 2025 WL 3188399, at *3–4 (E.D. Pa. Nov. 14, 2025) (Wolson, J.); *Zhang v. Genalo*, 814 F. Supp. 3d 307, 319 (E.D.N.Y. 2025) (finding that § 1252(g) does not prevent courts from hearing a challenge to detention following the revocation of a noncitizen's OSUP). This Court adopts the reasoning of those decisions here.

**B. Respondents failed to Comply With Applicable Procedures for Revocation of Release**

Under 8 U.S.C. § 1231, except as otherwise provided in the section, when a noncitizen is ordered removed, the Attorney General shall remove them from the United States within ninety days ("the removal period"). 8 U.S.C. § 1231(a)(1)(A). If the noncitizen does not leave or is not removed within the removal period, pending removal, the noncitizen shall be released and "be subject to supervision under regulations prescribed by the Attorney General," which are codified at 8 C.F.R. § 241.5. 8 U.S.C. § 1231(a)(3); *Dudamel v. Jamison*, No. 26-cv-361, 2026 WL 498612, at *4 (E.D. Pa. Feb. 23, 2026) (Quiñones Alejandro, J.). Certain inadmissible or criminal noncitizens, including those who have been "determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6).

Noncitizens like Mr. Lasko are generally released on an OSUP, which sets the terms and conditions of their release, such as the provision of certain written documentation to DHS.

*Dudamel*, 2026 WL 498612, at *4; (*see* ECF No. 5-2). If ICE decides to revoke a noncitizen's OSUP, they must comply with the procedures codified at 8 C.F.R. § 241.4(*l*). The regulations concerning the "[r]evocation of release" based on a determination by DHS (rather than a noncitizen's violation of conditions of release) provide:

> ***Determination by [DHS].*** The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
> > (i)     The purposes of release have been served;
> > (ii)    The alien violates any condition of release;
> > (iii)   It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
> > (iv)   The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(*l*)(2). Multiple courts have held that when an OSUP is revoked pursuant to 8 C.F.R. § 241.4(*l*)(2), the procedural protections afforded by 8 C.F.R. § 241.4(*l*)(1) apply. *See Martinez v. Jamison*, No. 26-cv-00718, 2026 WL 700335, at *3 (E.D. Pa. Mar. 12, 2026) (Kenney, J.) (collecting cases); *Dudamel*, 2026 WL 498612, at *4 n.6 (explaining that Supreme Court dicta supports this interpretation of the regulations); *Zhang*, 814 F. Supp. 3d at 323. This Court adopts their reasoning and holds that the procedural protections under 8 C.F.R. § 241.4(*l*)(1) equally apply to an OSUP revocation based upon a discretionary DHS determination pursuant to § 241.4(*l*)(2). Section 241.4(*l*)(1) provides:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

8 C.F.R. § 241.4(*l*)(1).

Mr. Lasko argues that Respondents revoked his OSUP in violation of applicable procedures. Here, Mr. Lasko was served a Notice of Revocation of Release the same day that he was detained and was subsequently afforded an initial informal interview. (ECF No. 5 at 13; *see also* ECF No. 7 at 6 (acknowledging that a Notice of Revocation was provided to Mr. Lasko); 10-1 ¶ 11; *see generally* ECF No. 10-2.) But the Notice itself provides limited information regarding the reason for revocation. The revoking official checked the boxes next to the following statements: (1) "Your release has been revoked pursuant to 8 C.F.R. § 241.4(*l*) for the following reasons:"; (2) "It is appropriate to enforce the removal order against you as ICE has the ability and means to effectuate your removal."; and (3) "On 12/21/2021, you were ordered removed to Belarus, but you were granted withholding of removal to N/A. Your case is under review for removal to an alternate country." (ECF No. 5-3 at 2.) No additional information is provided regarding the reason for the revocation.

At the outset, it is not clear to the Court that the Notice itself provides proper notice consistent with the regulations. It seems self-explanatory that for a Notice of Revocation to give "reasons for revocation," it must provide some explanation or rationale for the change in the government's approach to detention. But the Notice does not provide any information regarding the alternate countries to which ICE is considering removing Mr. Lasko or any new travel documents or procedures ICE has identified to facilitate removal. Perhaps recognizing that the Notice does not on its own provide much information as to the reason for revocation, in their Opposition, Respondents clarify that "DHS obtained a copy of Petitioner's passport before revoking his OSUP." (ECF No. 5 at 13.) Yet, as Mr. Lasko notes in his Reply and Respondents have since confirmed, Respondents were in possession of a copy of his passport since his initial

detention in 2021. (ECF No. 7 at 2; ECF No. 10 at 1.) This is hardly a change in circumstances that serves as a reason for revocation.

Even if the substance of the Notice did not give the Court pause as to compliance with 8 C.F.R. § 241.4(*l*)(1), Respondents failed to comply with requirements under § 241.4(*l*)(2) regarding discretionary revocation of an OSUP by a Field Office Director. Mr. Lasko argues that the revocation of his OSUP was procedurally improper because the Acting Field Director, John Rife, did not make the findings required under applicable regulations when doing so. (ECF No. 1 ¶¶ 35 (citing 8 C.F.R. § 241.4(*l*)(2)), 67–68, 94.) The Court agrees.

"[T]he language of section 241.4 specifically limits the power of anyone who is not the Executive Associate Director to revoke release, providing that such district directors can revoke release only when revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Director." *Zhang*, 814 F. Supp. 3d at 322 (quoting *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 161–62 (W.D.N.Y. 2025)) (citation modified). Respondents concede that the Notice "does not contain any explicit statement by the Field Office Director affirming these findings" but argue that neither the INA nor the implementing regulations require such findings to be explicit on the face of the document. (ECF No. 5 at 15.) Instead, Respondents assert the Court should "infer [from the record] that the Field Office Director made the required findings and, in turn, complied with his obligations under 8 C.F.R. § 241.5(*l*)(2)." (*Id.* at 15–16.)

But unlike in the cases Respondents cite, the record before the Court contains no information from which the Court may infer that the revoking officer considered the public interest prior to exercising his discretion to revoke the OSUP, such as the noncitizen's criminal history or a violation of a condition of OSUP. *See Reyes v. Jamison*, No. 26-cv-1324, 2026 WL 970231, at

*5 (E.D. Pa. Apr. 9, 2026) (Kenney, J.) (explaining that the "reasons supplied in the Notice detailing how Petitioner violated a condition of his OSUP and the notes provided by the Supervisory Officer, Assistant Field Office Director, and Deputy Field Office Director in the OSUP Revocation Worksheet explaining that Petitioner is subject to a final removal order and has a prior felony conviction are sufficient to show that the Acting Field Office Director, who signed the Notice, made the determination that revocation of Petitioner's release is in the public interest" (citations omitted)); *Barrios v. Ripa*, No. 1:25-cv-22644, 2025 WL 2280485, at *1, 7 (S.D. Fla. Aug. 8, 2025) (ignoring the lack of explicit findings regarding public interest where the noncitizen had "an extensive history of illegal entries into the United States and criminal convictions"). Here, while Respondents suggest that the Court can infer such findings from the record, they do not direct the Court to anything in the record supporting such a finding. In fact, Mr. Lasko has no criminal history and has complied with all conditions of his OSUP, so the Court cannot infer that there were any public interest factors warranting revocation. Additionally, the record does not suggest—and Respondents make no assertion suggesting—that circumstances did not reasonably permit referral of the case to the Executive Associate Director, which is also required under the regulations. 8 C.F.R. § 241.4(*l*)(2).

Accordingly, the Court concludes that the Field Office Director failed to make the findings required under 8 C.F.R. § 241.4(*l*)(2) before revoking Mr. Lasko's OSUP, and holds that the OSUP was not lawfully revoked and Mr. Lasko's detention was therefore unlawful. *See Ceesay*, 781 F. Supp. 3d at 161–62 (finding that assistant field office director did not have authority to revoke release where there was no evidence that he made the findings required under 8 C.F.R. § 241.4(*l*)(2)); *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("ICE, like any agency, 'has the duty to follow its own federal regulations.' . . . Based on ICE's violations of its own

regulations, the Court concludes Rombot's detention was unlawful.") (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)).

### C. Mr. Lasko's Detention Violates Due Process

Having determined that Respondents failed to comply with the requirements under 8 C.F.R. § 241.4(*l*) when revoking Mr. Lasko's OSUP, the Court now turns to whether his due process rights were violated. The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." The "Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Funes v. Francis*, 810 F. Supp. 3d 472, 498 (S.D.N.Y. 2025) ("[E]ven when a noncitizen's re-detention is statutorily committed to ICE's discretion, the Due Process Clause gives the noncitizen procedural rights in connection with the decision to deprive them of liberty."). To determine whether a government action violates procedural due process, courts apply the balancing test outlined in *Mathews v. Eldridge*, which weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the Government's interest, including administrative burdens of additional procedures. 424 U.S. 319, 334 (1976).

All three *Mathews* factors weigh in favor of Mr. Lasko. Mr. Lasko has a strong private interest in his personal liberty. The failure of the Government to follow its own regulations before revoking his OSUP, specifically failing to make any findings regarding whether his detention was in the public interest, poses a high risk of erroneous deprivation of his rights. Finally, following those regulations imposes minimal administrative burden on the Government. *See Dudamel*, 2026 WL 498612, at *8 ("[T]he burden on the Government to comport with its own regulations—if

10

doing so amounts to a 'burden' at all—is nowhere near so weighty as to outweigh the concomitant suppression of Petitioner's liberty.") (citing *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 180 (3d Cir. 2010)). I join my colleagues in holding that Respondents violated the Due Process Clause by revoking the OSUP and re-detaining Petitioner in violation of 8 C.F.R. § 241.4(*l*). *See, e.g.*, *Martinez*, 2026 WL 700335, at *7–8 (collecting cases); *Dudamel*, 2026 WL 498612, at *8.

### D.  The Proper Remedy is Release

Petitioner argues that the proper remedy for the violation of his due process rights is immediate release. (ECF No. 1 at 19; ECF No. 7 at 7.) The Court agrees, joining "many others who have ordered a petitioner's immediate release from detention after finding that [Respondents] violated procedures under § 241.4(*l*) in revoking the petitioner's OSUP, either by failing to provide a legally sufficient notice of revocation, an informal interview, or both." *Martinez*, 2026 WL 700335, at *8 (citation modified) (quoting *Zhang*, 814 F. Supp. 3d at 330).

### IV.    CONCLUSION

For the aforementioned reasons, the Petition is granted. An appropriate Order follows.

BY THE COURT:

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**